# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-20570
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Cesar Quezada-Atayde,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-304-1

---

Before Elrod, *Chief Judge*, Higginson and Ramirez, *Circuit Judges*.
Jennifer Walker Elrod, *Chief Judge*:

Cesar Quezada-Atayde challenges the special conditions of supervised release that the district court included in its written judgment. Because the district court satisfied the oral-pronouncement requirement, meaning that the written judgment does not conflict with the oral pronouncement, we AFFIRM.

No. 24-20570

I

Quezada-Atayde is a citizen of Mexico.  He first entered the United States with his mother when he was about two years old.  Federal officials first encountered Quezada-Atayde at a juvenile detention center in Brazos County, Texas in September 2015.  Although not initially charged with illegal entry, he was ordered to be deported and ultimately removed from the United States for the first time in November 2015.

In September 2020, Quezada-Atayde was found in the United States and arrested pursuant to multiple outstanding warrants.  In December 2021, he pleaded guilty to, and was convicted of, manufacture/delivery of a controlled substance and evading arrest/detention and was sentenced to five years in state prison.  In February 2022, while serving his state prison sentence, Quezada-Atayde was "screened" by Immigration and Customs Enforcement authorities.  In June 2022, he was indicted for illegal reentry by a previously deported alien, in violation of 8 U.S.C. § 1326(a).  In September 2024, Quezada-Atayde pleaded guilty to the indictment without a plea agreement.

The district court imposed on Quezada-Atayde a within guidelines sentence of 24 months of imprisonment to be followed by one-year of supervised release for which his Presentence Investigation Report recommended two special conditions, specifically,

> You must immediately report, continue to report, or surrender to U.S. Immigration and Customs Enforcement and follow all their instructions and reporting requirements until any deportation proceedings are completed. If you are ordered deported from the United States, you must remain outside the United States unless legally authorized to reenter. If you reenter the United States, you must report to the nearest probation office within 72 hours after you return. You must seek proper documentation from U.S. Immigration and

No. 24-20570

Customs Enforcement authorizing you to work in the United States.

Although the district court did not read the special conditions to Quezada-Atayde at sentencing, it did inform him that upon his release from prison he would "be placed on supervised release for a term of one-year." The court further advised him that if not deported upon his release he must "report in person to the probation office in the district to which [he] is released within 72 hours after being released from the Bureau of Prisons." And it ordered Quezada-Atayde to comply with the court's standard conditions, all mandatory conditions required by law, and "any additional conditions as noted in the appendix of the presentence investigation report." The court also imposed a $100 special assessment.

The district court included in its written judgment all the conditions with which Quezada-Atayde was to comply under the terms of his supervised release, including the special conditions listed in the PSR's appendix. Quezada-Atayde timely appealed.

On appeal, Quezada-Atayde argues that the "written judgment expands, and thus conflicts with, the district court's oral sentence as to the special conditions of [his] supervised release." He contends that the special conditions included in the written judgment are more burdensome than and thus in conflict with the oral pronouncement.

## II

"When a defendant objects to a condition of supervised release for the first time on appeal, the standard of review depends on whether [the defendant] had an opportunity to object before the district court." *United States v. Martinez*, 47 F.4th 364, 366 (5th Cir. 2022). Where a defendant had an opportunity to object at sentencing—even if he failed to do so—our review is for plain error. *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020)

3

(en banc) (citing FED. R. CRIM. P. 52(b)). But "if the defendant did not [have an opportunity to object], we review for abuse of discretion." *United States v. Baez-Adriano*, 74 F.4th 292, 297 (5th Cir. 2023).

Because Quezada-Atayde received notice at sentencing of the special conditions to be imposed but forfeited his opportunity to object, we review his challenge for plain error. *Diggles*, 957 F.3d at 560 (citing *United States v. Rouland*, 726 F.3d 728, 733–34 (5th Cir. 2013)); *see also United States v. Grogan,* 977 F.3d 348, 350 (5th Cir. 2020) (explaining that a "sentencing court pronounces supervision conditions when it orally adopts a document recommending those conditions") (quoting *Diggles*, 957 F.3d at 563)).

## III

In *Diggles*, our en banc court clarified that a district court must orally pronounce at sentencing any "discretionary" and "special" conditions of supervised release, in other words, any condition the imposition of which 18 U.S.C. § 3583(d) does not require. 957 F.3d at 556–59. "But oral pronouncement does not mean that the sentencing court must recite the conditions word-for-word." *Grogan*, 977 F.3d at 352 (citing *Diggles*, 957 F.3d at 562). The district court need only provide "the defendant [with] notice of the sentence and an opportunity to object." *Diggles*, 957 F.3d at 560; *see also* FED. R. CRIM. P. 32. Where a sentencing court has first confirmed that the defendant received and reviewed the PSR with his counsel and "orally adopt[ed]" a list of supervised release conditions contained in a standing order or the defendant's PSR, the pronouncement requirement is satisfied. *Diggles*, 957 F.3d at 561, 563.

The district court as "the first order of business at [the] sentencing hearing[] . . . verif[ied] that [Quezada-Atayde] reviewed the PSR with counsel." *Id.* at 560 (citing FED. R. CRIM. P. 32(i)(1)(A)). The record reflects that immediately after Quezada-Atayde's counsel made her

announcement on the record, the district court asked whether she had "received and read and had an opportunity for [her] client to read and discuss with [her] the presentence investigation report from the probation office." The court then asked Quezada-Atayde whether he was "fluent in . . . and able to read English." Only after receiving affirmative responses from Quezada-Atayde and his counsel to both questions did the district court allow the sentencing to proceed. *Id.* ("When the defendant confirms review of the PSR," sentencing may proceed.). The district court then stated that "there [were] no objections to the presentence investigation report and, therefore, [adopted the] . . .PSR." *See id.* ("a court's oral adoption of PSR-recommended conditions gives the defendant an opportunity to object").

Quezada-Atayde complains that he did not have an opportunity at sentencing to object to the special conditions of supervised release that the district court included in its written judgment. To the contrary, our review of the record indicates not only that the district court provided Quezada-Atayde with notice of the special conditions and ample opportunity to object, but also that Quezada-Atayde's counsel chose to lodge only a single objection. After the sentencing judge ordered Quezada-Atayde to "comply with any additional conditions as noted in the appendix of the presentence investigation report," he then asked if there was "any legal reason why the sentence should not be imposed as stated."

In response, Quezada-Atayde's counsel argued only that the federal illegal reentry charge for which Quezada-Atayde was being sentenced and the state drug charges for which he was already serving time in state prison were not separate offenses. Allowing her a further opportunity to clarify the objection, the sentencing judge asked Quezada-Atayde's counsel whether she was asserting a "legal reason that the sentence should not be imposed as stated." In response, Quezada-Atayde's counsel only reurged her argument that "the offense for the drug case is relevant conduct to the illegal reentry."

Because he "did not lodge an objection that would have alerted the district court of a possible need to make a more detailed recitation of the discretionary conditions and justify them," Quezada-Atayde forfeited his objection. *Grogan*, 977 F.3d at 353 (internal quotation marks omitted).

In sum, before imposing the sentence, the district court: (1) verified that counsel had reviewed the PSR with Quezada-Atayde; (2) heard from Quezada-Atayde, his counsel, and the Government; (3) offered the parties a "final opportunity for any legal objections"; and (4) reiterated that it had "previously adopted the findings and guideline applications of the presentence investigation report." So it cannot be said that Quezada-Atayde did not receive notice of the special conditions of his supervised release—specifically, that he should (1) immediately and continuously report to immigration authorities following their instructions until the completion of deportation proceedings and if deported remain outside the U.S. reporting to the nearest probation office within 72 hours should he return to the U.S.; and (2) seek proper documentation from immigration authorities authorizing him to work in the U.S.—located in the PSR's appendix or that he did not have ample opportunity to object. *Id.* Indeed, because Quezada-Atayde received notice of the special conditions included in his PSR, "he had 'far more opportunity to review and consider objections to those conditions' than defendants who hear about them for the first time when the judge announces them." *Diggles*, 957 F.34 at 560–61 (quoting *United States v. Bloch*, 825 F.3d 862, 872 (7th Cir. 2016)).

## IV

Because there can be no doubt that after verifying that Quezada-Atayde had reviewed the PSR with counsel the sentencing judge "notifie[d Quezada-Atayde] of the conditions being imposed and allow[ed] an opportunity to object," there is no conflict between the special conditions

No. 24-20570

contained in the written judgment and the oral pronouncement.  *Diggles*, 957 F.3d at 563.  The judgment of the district court is AFFIRMED.